# HIGH COURT OF ERRORS AND APPEALS,

## At Philadelphia, July, 1797.

ANNE M'PHERSON, widow, *et al*, devifees of ROBERT M'PHERSON, *v.* ALEXANDER M'PHERSON.

IN an action in partition brought in the Common Pleas of *Chefter* county, and removed into the Supreme court, on a cafe ftated, it was fubmitted to the Supreme court to determine, whether *Alexander M'Pherfon* and *Robert M'Pherfon* were tenants in common or joint tenants, under the will of *John M'Pherfon.* If they were joint tenants, there was to be judgment for the defendant; if they were tenants in common, there was to be judgment for the plaintiffs.

The opinion of the Supreme court was, that they were joint tenants; and judgment was entered there for the defendant.

On this, a writ of Error was brought; and the cafe appeared as follows :—

On 23d *November*, 1762, *John M'Pherfon* made his will, which, after directing all his debts, &c. to be paid; giving his wife 100*l.* with all his furniture (except the clock) his forrel mare, a lodging room, the keeping of one cow, and provifion neceffary for her table during life; and directing, that, if fhe marry, fhe fhould then quit her claim to the lodging room and table neceffaries; proceeds thus :—" I give and bequeath to my fon *Alexander*, the plantation whereon I now dwell, to him and to his lawful heirs, alfo my clock. I give to my fon *Robert* the plantation whereon he now dwells, to him and to his lawful heirs and affigns. *Item. I further give*

Y 4

1797.

and bequeath to my *fons Alexander* and *Robert* all that plantation or tract of land I purchafed from *Samuel Williams*, to them and their lawful heirs and affigns, to be in full poffeffion of the faid *Alexander* and *Robert*, until fuch time as my fon *John* perfonally appears, and demands the faid plantation; and when he does appear, and demand the faid plantation, then it is my will, that my fons *Alexander* and *Robert*, or their lawful heirs, do peaceably and quietly yield and give up the fame to my fon *John*. I give to my daughter-in-law *Sarah* 10*l*. to be paid in one year after my deceafe. And, if any money is remaining of my perfonal eftate, after my faid legacies and bequeathments are fully paid, then it is my will, that the fame be equally divided between my wife and my fons *Alexander* and *Robert*. I order and appoint my wife and my fons my fole executors, &c."

His fon *John* has not yet returned, nor is it known what has become of him. *Robert* made a will, and devifed his real eftate to his wife and children. He died. They furvived him, and are the plaintiffs in the writ of Partition, and the writ of Error. *Alexander* is the brother of *Robert*, and claims as joint tenant under his fathers will and furvivor.

*Wilcocks* and *Tilghman*, for the plaintiffs. The rules for conftruing wills are the fame at law as in equity.— In equity, joint tenancy is faid to be odious. It is fettled, that the intention of the teftator prevails, if not againft any rule of law. And tenancy in common will rather be favoured, than joint tenancy. The court will prefume a tenancy in common, unlefs there be plain words to the contrary.

In a cafe, where the legal words make a joint tenancy, lord *Mansfield* relies on the circumftance of the teftator having a pride in his family; and, without any words fhewing a tenancy in common, it has been conftrued from the circumftance of money being advanced by both. It is doubtful, whether, by *lawful heirs*, an eftate tail is not created.

In this cafe, if the devife to *Alexander* and *Robert* had ftopt at giving the eftate, it might have been more doubtful. The fubfequent words fhew, that a tenancy in common was intended. This plantation was to be in the *full poffeffion* of *both*, until *John* fhall demand it. If,

3 *Burr.* 1541,
1570, 1579,
1581.—2 *Bur.*
1112.—2 *P.*
*Wms* 673.
3 *Burr.* 1541.
3 *Burr.* 233.
3 *Bac.* 198.
*Moor.* 558.
1 *Vern.* 353.
1 *Ves.* 166.
2 *Ves.* 258.
3 *Atk.* 734.
1 *Wils.* 165.
1 *Salk.* 158.
1 *Eq. Ca. Abr.*
293.
3 *Burr.* 1581.
2 *Ves.* 258.
1 *Ves.* 521.

1797.

during the life of both, *John* demand it, *both* were to give it up. If, before *John* demand it, either or both die, the words are not, the furvivor or his heirs shall give it up to him; but that they or *their* heirs shall give it up to him. This, *reddendo fingula fingulis*, plainly implies, that the heirs of both might be in pofleffion; and this could be only by a tenancy in common. Thefe words are equivalent to a devife to them and their heirs *refpectively*. It is not neceflary, that there should have been words to shew, that each should hold in feveralty: there are none fuch in any tenancy in common. They hold *per my et per tout*, till an actual divifion is made.

The teftator feems plainly, from the whole will, to have intended a perfect equality to his fons, *Alexander* and *Robert* and to have intended an equal provifion, out of his real eftate, for his abfent fon *John*, if he should return. He makes his two prefent fons executors. All is impartial; and it cannot be fuppofed, that he could have intended, that if, as in the prefent cafe, one of his fons, leaving a numerous family of children, should die before the other, the furvivor should enjoy two-thirds of the eftate. He intended an equal share to each of his children, and that each should tranfmit this share to his defcendants. The court will give effect to this juft intention, and declare this to be a tenancy in common.

*T. Rofs*, for the defendant. I admit, that the intention of the teftator, governs the conftruction of the will, where it is not contradicted by any exprefs rule of law. But this intention muft be collected from the will itfelf, and not from extraneous circumftances. The words *equally to be divided*, or *share and share alike*, or to them and their heirs *refpectively*, have been fufficient to make a tenancy in common.

An eftate in joint tenancy is created by a grant to two and their heirs. The general prefumption is in favour of joint tenancy, unlefs there be words shewing a different intention. The claufe in this will is, " I give to my fons *Alexander* and *Robert* all that plantation, to them and their lawful heirs." This is clearly a joint tenancy, and, had he ftopt here, there would have been no doubt. What is there, in the fubfequent words, to change this conftruction? The object of the teftator, in this claufe, was a provifion for *John*, not for *Alexander* and *Robert*, and their children.

2 *Atk.* 121.
L. *Ray* 692.

2 *Comm.* 179-81.

It does not appear which was the eldeſt, whether *Alexander* or *Robert* ; and, if it did, it could not effect the conſtruction.

Though courts may lean to tenancy in common, it is always on neceſſary inference from the words of the will, not from ſurmiſe.   To found a conſtruction on any other preſumptions than thoſe to be drawn from the will itſelf, is to make a will ; and to do ſo in this caſe would be to make a will for a man who died thirty-five years ago.

The court of Errors and Appeals held this to be a tenancy in common, and reverſed the judgment of the Supreme court.   But in this they were not unanimous. Their opinions were ſomewhat as follows :—

SHIPPEN and COXE, J. held it to be a joint tenancy.

1. Here is a clear joint eſtate veſted in *Alexander* and *Robert* ; and it cannot be deveſted without a clear intention expreſſed.

2. No ſuch clear intention appears, nor any clear intention, that this ſhould be a tenancy in common.— The words, uſed in creating the obligation to ſurrender, are the ſame as thoſe uſed in creating the eſtate. They are therefore to be conſtrued in the ſame way in both parts of the will ; and the meaning is, that whoever, under the will holds the eſtate at the time of the demand, ſhall then ſurrender it.

3. As to equality, this conſtruction equally ſecures it : for either had an equal chance to ſurvive the other.

CHEW, Preſident, and SMITH, ADDISON, HENRY, and RIDDEL, J. held this to be a tenancy in common.

1. It appears, from the whole of this will, that equality between the two ſons *Alexander* and *Robert* was intended.   And ſuppoſing, in reſpect of age and health, their chances equal, the equality ought to be conſtrued a real, and not a caſual equality.

2. Courts in *England* have gradually inclined to conſtrue in favour of tenancy in common; and, from this progreſs of judicial opinions there, and the ſtate of property here, we ought to lay hold of every poſſible conſtruction, to make it a tenancy in common.

3. The natural, if not the neceſſary conſtruction of the direction, that his ſons *Alexander* and *Robert*, or their heirs, ſhould give up the plantation to *John* is, that his

1797.

fons, if both alive fhould give it up; or if either of them were dead, that the furvivor, and the heirs of the other fhould give it up; or, if both were dead, that the heirs of both fhould give it up: and this conftruction can confift only with a tenancy in common.

4. Though the devife be in the fame words *to them and their heirs*, yet thefe have a technical meaning in a grant, and there is no reafon to incline us, in favour of a joint tenancy, to ftretch them to the fame fenfe in a claufe out of the ordinary form. In the grant, the expreffion is to them *and* their heirs. In the condition, it is to them *or* their heirs.

5. Though there be no precedent for conftruing a tenancy in common from words like thefe, this conftruction is in the fpirit of former decifions; and there was a time when there was no precedent for conftruing a tenancy in common from the words *equally to be divided, &c.*

6. This is a contingent truft: it is yet poffible that *John* may return, and demand the eftate. Now it is a truft coupled with a prefent intereft.